NO CRIME COMMITTED

page #29(a)  August 11, 2007 (about 5pm) @ lot across from APW

Exactly 1 year from (Office Room Trap) REF: page 22 & MYDOCUMENTS/STARTofITALL.TXT



Footnotes

Page #29(b)

In addition to the 1 year anniversary of a 2nd threat of assault from Roland by the hands of kafu, termed as "stretching" during the office room trap refered on page 22, I'm again disturbed by kafu's revelation, racial and religious slurs constructing psychological harrasment and abuse. I decide it is the day to settle the matter once and for all. I grab 2 pairs of large 18oz. lace-up pro-sparring gloves and head out to the APW gym. I call Vince Shipman, my ex-trainer @ 925.382.4942, suspiciously the cells voice greeting now belongs to Kristina Shipman, his wife. (I've recieved phone calls from this # 2-3 weeks prior at about 2 in the morning, repeatedly, as I refused to answer on 2 occasions. Replying with texts explaining I was deleting whatever voicemessages they repeatedly left, I invited whom I thought was Vince, to meet me @ 24 Fitness the next day if he wanted to talk.) I leave a message letting them know I'm coming for a truce, or to get in the ring with kafu, gloves on. Chris Cherolis, one who admited he never liked me in class, who advised that I should kill my-self in an email, is blowing up my cellphone "again". I speak with Dana Lee as I'm westbound on the 92. I let him know I want a truce, my money, or to go one on one with kafu as invited before. I park as shown upon arrival, throw the 2 pairs of gloves on my hood, and begin making phone calls to APW affiliates. I DO NOT ONCE CROSS THE STREET NOR LEAVE THE VICINITY OF MY VEHICLE. I WAS WITHIN MY RIGHTS. kafu appears, walking to the point marked he raises his arms in a taunting motion, laughing. I do the same @ point ① return to my driver side door to lock it, as Vince walks towards me from across the street with 3 caucasian males accompanying him. I return to point ① where I greet him:

① He sends 2 of his escorts away across the street. I speak with him as he is firm but sympathetic, advising to sue Roland or even call the police. He asks that I leave and I state I've intentions to, I just wanted him to hear me out. His escort jumps into the conversation and explains that "all he knows is that I don't belong there, and that my delay in leaving could cost him his spot to wrestle during the show that night." I reply that "I've more right to be there than him, as I paid $2,000", he was a visiting wrestler. A while later as I'm speaking to Vince, the escort pulls out a taser, ignites it in my direction, then stuffs it back into his sweatshirt. Admiting defeat, I back away and state my leaving, but before doing so ( kafu laughing across the street), I recite aloud in arabic with a voice of protest, "Read in the name of your Lord and cherish Him who created - created man out of a clot of congealed blood! Proclaim! And your Lord is Most Bountiful - He Who taught the use of the pen taught man that which he did not know. God is Great! You're a f'in coward kafu. I'm going to f you up one day. There is no God but thee God."

② I then head to and open my drivers side door, retrieve the gloves from the hood and throw them into my truck. I contest to Vince that he knows that I was screwed, and that in his heart he knows so. He and his escort walks to my side of the truck and calms me. He advises I call the police and sue Roland. I apologize for my immaturity and for any disrespect. They claim none taken. I'm about to enter my truck and notice Shane Mai (production) taking pictures or videos of me across the street as he comes forward (as marked). I sarcastically pose for him bringing forth smiles and laughs. I notice kafu amidst a large mob, I recite again aloud in arabic with a voice of protest, "Perish the hands of the Father of Flame! Perish he! No profit to him from all his wealth, and all his gains he will be burnt soon in a Fire of blazing Flame! And his wife, the carrier of the crackling wood as fuel! A twisted rope of Palm-leaf fibre round her own neck! God is Great! You're a bitch kafu!" I get into my truck and ask Vince and his friend to excuse me for the outburst.

③ Driving off, I stop and pose for Shane Mai's photography. I flick him off, and then give him the old Rock N' Roll gesture, sticking out my tongue. I head off to my family's get-together at my sister's place, which I am late for. ☺

ANY VIDEO TAKEN THAT DAY WILL PROVE THE ABOVE TRUE. MY INTENTIONS WERE A TRUCE AND RETURN TO TRAINING, OR MY MONEY BACK, OR TO BOX kafu ONE ON ONE IN THE RING. I MAY HAVE WRITTEN OR SPOKEN HARSHLY OUT OF ANGER BUT HAD NO CRIMINAL INTENTIONS, FOR WHAT THREAT WAS I CHALLENGING ONE WITH GLOVES BROUGHT FOR THE TWO OF US? FOR WHAT THREAT WAS I WILLING TO DISCUSS THE MATTER IN BROAD DAYLIGHT? I'm INNOCENT!

1. The Burlingame Police Department have displayed gross negligence and prejudice in
2. their investigation, violating the defendants Constitutional Rights, Amendments Fed. Const.
3. 14(1), Fed. Const. (4) Ca. Const. 13, Ca. Const. 24, Fed. Const. 5, influencing a violation of
4. Fed. Const. 8, concealment of a violation of Fed. Const. 13(1) and Ca. Const. 6, and suppressing
5. Ca. Const. 28 (d). A complete, thorough and non-biased investigation should have made
6. clear the defendants initial victimization by senior affiliates of the alleged victim,
7. in which there are grounds for probable cause of multiple criminal violations of the
8. law, which include PC 181, PC 182 (a)(2), PC 182 (a)(4), PC 519 (2), PC 519 (3), PC 519 (4),
9. PC 137 (a), PC 137 (b), PC 137 (c), PC 136.1 (1), PC 136.1 (2), PC 136.1 (b)(1), PC 136.1
10. (b)(3), and PC 474. It is admitted by the investigators and made clear to the defendant by
11. counsel, that the prosecuting party have been investigating the defendant for a period
12. of at least six months prior to his arrest, and continue to investigate and build their
13. case during an undue delay in deliberate, suspended criminal proceedings, impair-
14. ing the defendant to defend himself in oppressive incarceration prior to trial, thus
15. undermining the integrity of the court in any further or future prosecution of
16. the defendant in regards to the alleged victims and affiliates of the Hayward bas-
17. ed company All Pro Wrestling. • By Rule 48(b) of the Federal Rules of Criminal Proce-
18. dure, which has the force of law and which authorizes dismissal of an indictment, inform-
19. ation, or complaint if there is unreasonable delay in presenting the charge to a grand ju-
20. ry or filing an information against a defendant or if there is unnecessary delay in
21. bringing a defendant to trial, coinciding with and complimented by the Sixth Am-
22. endment of the Federal Constitution's guaranty of a speedy trial, as well as those
23. secured by this State's Constitution's 24th and 29th amendments, the court has
24. no alternative but to completely quash the charges brought against the defendant,
25. and/or dismiss the case in it's entirety. The Burlingame Police Department's negligent
26. violation of the defendants Federal Constitutional Right of amendment 14(1) quoted "nor deny to
27. any person within it's jurisdiction the equal protection of the laws." is showcased in the
28. investigating officer's incompetency to promptly and unbiasedly without prejudice fully
29. investigate the suspected criminal activity. It is argued that the defendant made an init-
30. ial disturbance call and complaint in January 2007, though he decided not to press charges, in
31. regards to harassment by Roland Alexander, owner of APW, via text messages in whi-
32. ch Roland sent the defendant insulting and taunting messages non-stop, repeatedly for
33. a period of nearly an hour, until he was later contacted to cease by the consulting
34. officer. The defendant stated to the witnessing officer that he was being blackmailed
35. by the now alleged victim, Roland Alexander, who is an obvious mastermind behind
36. this prosecution. The Burlingame Police Department failed to exercise equal protection
37. of the laws when a complaint was filed against the defendant. He was neither warned,
38. questioned, nor served with a restraining order. The purpose of law enforcement is to
39. keep the peace and crime prevention, not incitement. The investigating officer showed
40. prejudice when siding with the plaintiff, whom with or without the Police Departmen-
41. ts knowledge, continued to, with APW affiliates, constructively harass the defe-
42. ndant. It was no mystery as to where the defendant resided. He also exposed the scandal in wh-
43. ich he was victimized publicly. Referring to the text files residing on his (disputedly sei-
44. zed) notebook computer, MYDOCUMENTS/STATOFITALL.TXT, PARTIALREFUNDREQUEST.TX
45. LAST.TXT, which were posted publicly online, the investigating officer is given a time-
46. lined summary, in which he had the opportunity and probable cause to investigate with
47. the defendant the entire truth in a sooner and more justifiable manner. • During the
48. interrogation in which the two officers of the Burlingame Police Department imposed on
49. the defendant, as promised by one to be an investigation to determine the truth and
50. if any criminal acts were committed against the defendant, the defendant was asked
51. if he had any evidence to support his story. The defendant replied he had written journal
52. of how everything started (having original intentions of bringing Roland to small claims cour-
53. ), supported with saved emails on his notebook PC left at home. Given the impression
54. the investigating officer would print the journals and emails as promised for an
55. investigation of crimes made against him, the defendant in custody escorted the
56. two law enforcement officers into his home. Instead of the promised investigation,
57. the leading officer angrily and aggressively disconnected a PC tower from an enter-
58. tainment center, and sluggishly pulled the notebook from a music studio workstation
59. with no warrant for seizure thereof, no regards to the defendants rights to privacy
60. and property protected by Fed. Const. (4) "The right of the people to be secure in their per-

62 be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affi-
63 rmation, and particularly describing the place to be searched, and the persons or things
64 to be seized.", Ca. Const. 13 "the right of the people to be secure in their persons, houses,
65 papers, and effects against unreasonable seizures and searches may not be violated",
66 and Ca. Const. 24 "the equal protection of the laws... to be free from unreasonable search and
67 seizures, to privacy." thus violating the defendants constitutional rights as well mentioned again,
68 the rights of a defendant to equal protection of the laws argued earlier. A week later af-
69 ter the defendant's arrest, the investigating officer contacted the defendant's sister
70 to meet him at the defendant's in-law unit which he rented. The officer claimed he had
71 a warrant to seize the model replica katana and model replica naginata, the defend-
72 ant stated he had on display during the initial interrogation, assuring the defendant's
73 sister that it was not to be used as evidence as he, the investigator has more than
74 enough on the defendant. The defendant practiced martial arts as a teen and holds
75 a certified brown belt in Fuma-Ryu Ninjitsu. These dull bladed replicas are mere
76 models that may be used for practice and not intended as weapons. They are inc-
77 ompetent evidence not even related to the defendant's arrest. This shows malice in
78 the prosecuting party. ● By Fed. Const. 5 "Nor shall any person be subject for the same offen-
79 ce to be twice put to jeopardy of life or limb, nor shall be compelled in any criminal case to
80 be a witness against himself, nor be deprived of life, liberty, or property, without due process
81 of law; nor shall private property be taken for public use, without just compensation" the
82 defendant has several arguments. Raising the issue of double jeopardy, the defendant is again dubbed the
83 Jeri Ryan stalker through the media. He is informed by counsel that this will be used against him.
84 It must be made clear, and may be proven if necessary, that the defendant was obviously
85 misrepresented and was not convicted by a jury. The only relevance of that prior, was
86 that the defendant was targeted and harrassed as a result of it. During the initial int-
87 errogation by the defendant, which was recorded and later claimed to have been distorted, by
88 the investigator upon a contact visit in county jail the morning of the arraignment, the de-
89 fendant spoke freely of how the situation started, and pled his side as mentioned earlier.
90 He was given the impression that the questioning was an interest of justice, but the inte-
91 ntions of the investigator was to compel him to be a witness against himself by testimony.
92 The investigator displayed no regard to due process and ignored or canceled probable cr-
93 imes committed against the defendant. The PC tower and notebook were private property seiz-
94 ed from his home without warrant. The model replica katana and model replica naginata's
95 seizures may have been warranted, but they were private property seized by the investigator
96 who claimed they weren't to be used as evidence. ● By Fed. Const. 8 "Excessive bail shall not
97 be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." it is
98 argued. The defendant made it clear to the investigator while he was being booked, that he was
99 not guilty and would opt for a speedy trial. During the second interview conducted by the in-
100 vestigator the morning before his arraignment, the defendant mildly scolded him and made it
101 known he will ask for an OR. The investigator was present with two caucasian males from
102 APW during the arraignment. When the case was called, the investigator with one of the
103 males, probably a Chris Kelsey resembling Chris Cherolis, huddled with the prosecutor. She
104 then made an oral motion that bail be raised. It was granted, as a suspect influence from
105 the investigator as a retaliation to the prior. $800,000 is obviously excessive for an alleged
106 crime which was non-physical, non-violent, involving a cell-phone and two pairs of box
107 ing gloves. There was no reason on part of the defendant. That coinciding with incarcera-
108 tion, constitutes cruel and unusual punishment for dropping out of a pro-wrestling school
109 and wanting a partial refund, for just reasons. ● A factor of the defendant dropping out of th-
110 e All Pro Wrestling Organization was the violation of his Constitutional Rights Fed. Const.
111 13 (1) "Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the
112 party shall have been duly convicted, shall exist within the United States, or any place
113 subject to their jurisdiction." and Ca. Const. 6 "Slavery is prohibited. Involuntary servit-
114 ude is prohibited except to punish crime. "During APW Orientation in July 2006, it's
115 staff explained to the students enrolled of "paying our dues". That we are subject to
116 forced labor (fraudulently ommitted from the contract). They began the brainwashing of
117 prioritising APW before work, wedding functions, and even family, if we wanted to be
118 successful. That we are required to make local and long distant shows, requesting
119 days off employment if need be. They mentioned an old-school pro-wrestling school term
120 "stretching", which was defined as physical punishment. This would be inflicted up-
121 on us if we did not follow directions or break the rules, many unheard of. The defend-
122 ant explained this both publicly and to the investigator as they hyphe left and by the

123 whole situation came about. One truth is certain, the Burlingame Police Department, the investi-
124 gator & the prosecuting party as a whole have either neglected or concealed this matter of
125 fact. If slavery is justified, then the defendant shall be held accountable for his actions.
126 It is not. With regards to the bondage that the defendant had been subject to, it is only
127 imperative that he rebel. The continued incarceration of the individual only perverses the law
128 when it has been used as a retaliatory tactic by the hands of an apparent. It may relate
129 to the past of the run away slave and his master, with the master seeking punishment.
130 We are not in those days. The defendant has no binding physical or financial obligation to
131 the company apposed, yet it is implied and imposed so. The only respectable resolution wo-
132 uld be the justified release of the defendant and his matter settled in a civil court
133 of law. • In regards to Ca. Const. 28 (d)", relevant evidence shall not be excluded in any crim
134 inal proceeding, including pretrial and post conviction motions and hearings.." the defend-
135 ant raises the matter of suppressed evidence, by the prosecution, as well as counsel. It
136 was promised him a complete investigation, printouts of the text files present on the
137 notebook PC (mentioned earlier), as well as emails, by the investigating officer. The defen-
138 dant also requested these, as well as a copy of the police report from his court appointed
139 counsel. None have been made accessable to him. Thus far, eleven pages of information
140 the defendant submitted to Eric M. Hove in a request for copies have not been ret-
141 urned, despite the repeated requests. Eric has repeatedly broken promises to return
142 copies of them. The defendant suspicious of a fraudulent misrepresentation will note
143 them here as documents # 7, 8, 9, 10, 11, 12, 13, 14, 23, 24, 25, which unfortunately contain
144 some of the most vital elements to the defendant's defense. (This document itself is
145 included in the continuing series.) Upon those documents is a list of physical evidence
146 which the defendant wishes to admit into court as relevant exibits, which include candy
147 from MsChif, reciepts and a Wells Fargo faxed copy of a check pertaining to the disputed
148 payment, a letter bolderlining extortion from Roland made after he filed a complaint agai-
149 nst him, and others admissable. The defendant respectably desires a fair trial if the
150 case, notably argued, must go that far. He also wishes to excercise his right to truth-
151 in-evidence. Despite the fued with the organization All Pro Wrestling, he is a born citizen
152 of the United States, of a citizen mother, daughter of a U.S. soldier and survivor of the Ba-
153 taan Death March, of a father who served twelve years in the U.S. Navy, hard workin
154 and humble, law abiding man earning an honest living. The defendant is not one to start
155 and initiate trouble, but in all honesty will he not back down from it. • The defendant cont-
156 ends that he was initially victimized by the senior affiliates of All Pro Wrestling. Multiple count
157 of criminal violations which include : PC 181 "Every person who holds, or attempts to hold, any per-
158 son in involuntary servitude, or assumes, or attempts to assume, rights of ownership over
159 any person, or who sells, or attempts to sell, any person to another, or who buys, or attempt
160 s to buy, any person, or pays money, or delivers anything of value to another, in conside-
161 ration of having any person placed in his custody, or under his power or control, or who know
162 ingly aids or assists in any manner any one thus offending" The defendant states he was sub
163 ject to forced labor. Under pretenses of "paying dues", he was obligated to work for Roland A
164 lexander, Jason Deadrich, Gabriel Ramirez and run errands for kofu. The various tasks
165 included the painting of the APW Gym, breaking down / loading & unloading / setting up the
166 wrestling ring, withdrawing & setting up chairs, laying down & setting up production equipment,
167 performing security work (given dull or outside posts, and patrol), passing & posting fliers, mak-
168 ing water, redbull & food runs for kofu, all performed in Hayward, San Francisco, and a Baker
169 sfield show, and other tasks / errands forgotten at the moment. Still, after being humble eno-
170 ugh to perform these jobs, the affiliates mentioned singled out and outcasted the defend-
171 ant. All but him were invited to the afterparties of the Kezar shows and the APW bar-
172 becue held over its weekend. He was not invited to a class seminar held on the after-
173 noon of 9|2|06. A factor in the defendant's decision to leave, still Roland felt the de-
174 fendant was obligated to the school and owed him $1000 mere. Roland then slandered the
175 defendant with the other students, informed the staff that the defendant threatened
176 his life (a lie), and threatened the defendant with legal and criminal action if he did
177 not comply to his (Roland's) request. The defendant was left in a state of bondage
178 with rumors and gossip flourishing the gym after his departure. His rebellion via
179 communications was fed by various affiliates, as stated in his written documents.
180 Unbelieving he could be betrayed to such an extent as this, he did not collect evidence
181 on his behalf. The defendant had no mens rea. His returning to Hayward the night of
182 his arrest proves it. To prosecute this individual for prison time after all he has endur-

184 tructive force imposed on the defendant. PC182(a)(2) "If two or more persons conspire falsely
185 and maliciously to indict another for any crime; or procure another to be charged or arrested
186 for any crime" It is quit obvious Roland Alexander and other affiliates may have
187 planned this prosecution all along. To refuse refunding any money to the defendant.
188 Speak ill of him in libel and vocally. Working in unison to constructively harrass the
189 defendant in both initial and retaliatory offenses, all the while collecting evid-
190 ence to be used against him, before and after a complaint was filled, thus proving
191 negligence on the part of law enforcement officials. PC182(a)(4) "If two or more persons cons-
192 pire to cheat and defraud any person of any property, by means which are in themselves criminal
193 or to obtain money or property by false pretenses or by false promises, with fraudulent int-
194 ent not to perform those promises." The intentions of Roland, Jason, and kofu welcoming
195 the defendant to return to the All Pro Wrestling training school is suspect. Roland asked
196 the defendant to meet with him and staff numerous times, and for the defendant to
197 make his final payment. This may have occured after a complaint was filed by any
198 of APW's affiliates, thus undermining APW's true intention, which may have been
199 to collect money from the defendant and sooner seek his arrest thus violating
200 the stated criminal offense. Evidence is existent. PC519(2) "to accuse the individ-
201 ual threatened, or any relative of his, or member of his family, of any crime" Roland
202 Alexander falsely accused me of threatening to kill him when he tried to arrange a
203 meeting between the two of us, so that I can make a payment to him. I told him I'd
204 see him in court and cussed him out. He also accused me of stalking M. Chif and
205 harrasing everyone. This a result of the defendant dropping out for just reasons
206 and wanting only a partial refund. Roland refused insisting the defendant
207 pay him more money threatening with legal and criminal action. Evidence is
208 existent. PC519(3) "to expose, or to impute to him or them any deformity, disgra-
209 ce or crime" Roland threatened that if the defendant makes any claim against him
210 or APW, that he would expose the detriment the defendant brought upon himself
211 and caused by his actions. Roland spoke of the defendant as he had been consistent
212 nuisance all along, when the truth is that Roland and company induced the defendant
213 Evidence is existent. PC519(4) "to expose any secret affecting him or them" Roland Alexa-
214 nder and affiliates knew the defendant was convicted of a prior stalking. They
215 used this as a means not to release the defendant from his contract, a means
216 to deal unconscionable with the defendant, and as a defense and cover to APW's
217 scandalous and fraudulent ways. The defendant's choices were to pay up, or risk
218 exposure if he decided to pursue a claim. Evidence is existent. PC137(a) "every per-
219 son who gives or offers, or promises to give, to any witness, person about to be called as a witness, or
220 person about to give material information pertaining to a crime to a law enforcement official,
221 any bribe, upon any understanding or agreement that the testimony of such witness or informa-
222 tion given by such person shall be thereby influenced is guilty of a felony" Both Roland
223 Alexander and Jason Deadrich are very capable to influence the testimonies of wit-
224 nesses brought against the defendant. Both fans, volunteers, employees and stude-
225 nts would more likely be biased towards the defendant, regarding the politics of APW
226 of obeying the chain of command and orders, to not jeopardize one's career or status
227 in the organization. The defendant's constructive view of All Pro Wrestling is that of
228 a criminal organization profiting from drug trafficing and prostitution, which concerns
229 him on the integrity of the witnesses to be called, the investigating officer, the prose-
230 cution, and even his first court appointed counsel. PC137(b) "Every person who attempts
231 by force or threat of force or by the use of fraud to induce any person to give false testimo-
232 ny or withhold true testimony or to give false material information pertaining to a crime to,
233 or withhold true information pertaining to a crime from, a law enforcement off-
234 icial is guilty of a felony" There is one word taught by All Pro Wrestling that sums the
235 defendants concern up. "stretching" as mentioned. The organization is ran like a gang.
236 You are rewarded for cooperation, or punished for disobedience. PC137(c) Concern
237 is respected. PC136.1(1), PC136.1(2) "Intimidation of witnesses" Both shall be respectably
238 noted. The concern of the defendant is, fear of potential witnesses that may aid him in his
239 defense, of them being prevented or dissuaded from testifying on the defendant's behalf.
240 PC474 "Forgery; telegraph or telephone messages... knowing the same to be false, or for-
241 ged, with intent to deceive, injure, or defraud another" During the initial interrogation,
242 the investigating officer mentioned the defendant sending Jason Deadrich, co-own-
243 er of APW, a threatening message via cell phone text. The investigator insisted that
244 the defendant sent a threat text message, a week before stating that he threatened

245 the alleged victim with bodily harm "of bashing his (Jason's) head in." The defendant suprised
246 by the revelation as being outrageous, denied the accusation claiming he honestly doesn't
247 remember sending the message, that Jason Deadrich's cell phone had been disfunction-
248 ed when he tried to reach the subject via phone call, so how could he have even recieved
249 a text message? "Oh yeah, you want to see the photo of it?" replied the investigator.
250 The defendant innocent to the accusation replied so. After retrieving the defendant's
251 file the investigator claimed, "this is all your emails and text messages." The defendant
252 acknowledged the binder but was never shown the photocopy taken of the cellph-
253 one text. The investigator then attempted to compel the defendant to incriminate himse-
254 lf with leading statements. The concern of the defendant is the possibility of forged emails
255 and text messages that may have been used for the purpose of an indictment. furthermore
256 the admittance of such exibits in trial. Emails are easily doctored and photos of cellphone
257 screens are disputable. The defendant would also address the "elaborately hand cropp-
258 ed photo of MeChri" which was attached to his file, and the true intentions of the pervert-
259 ed investigating officer whom placed it. It is relevant to also note : PC 620 "every per-
260 son who willfully alters the purport, effect or meaning of a telegraphic or telephonic
261 message to the injury of another". Considering the acts of the affiliates of All Pro
262 Wrestling, in regards to the mentioned Penal Codes, and the next two to be addressed,
263 it is a high probability that this code itself was violated to maliciously seek (and
264 now achieved) the indictment of the defendant. PC 136.1 (b)(1) "every person who attempts
265 to prevent or dissuade another person who has been the victim of a crime or who is witn-
266 ess to a crime from making any report of that victimization to any peace officer or stat-
267 e or local law enforcement officer or probation or parole or correctional officer or
268 correctional officer or prosecuting agency or to any judge. "The defendant was an obv-
269 ious victim of an attempted premeditated assault, was being blackmailed, left in a
270 state of bondage, a victim of a scandalous and obviously fraudulent organization, in
271 which the owner pursued more money from him, and threatened he would take legal
272 and criminal action against the defendant if the defendant chose to bring a lawsuit
273 or make any further criminal complaint against him (Roland). Roland threatened
274 the defendant with exposing the defendant's (incited) shameful acts. The affiliat-
275 es of All Pro Wrestling conspired against and blandered the defendant to cover up
276 their own and initial violations of the law, so he (the defendant) would make or
277 attempt any legal or criminal action. It is outrageous prosecution is saught
278 against the defendant! PC 136.1 (b)(2) "every person who attempts to prevent or dissuade an-
279 other person who has been victim of a crime or who is witness to a crime from arresting or
280 causing or seeking the arrest of any person in connection with that victimization. "
281 With regards to the text files mentioned on the defendant's laptop, the saved emails,
282 his written documents submitted to Eric M. Hove, and to these further documents writ-
283 ten and being written, and to a just and due probe of all arguements mentioned, the truth
284 will be clear that the defendant was victimized by a constructive and combined effort on
285 the part of All Pro Wrestling (it's affiliates), in their achieved attempt to subdue the def-
286 endant from filing a claim or complaint against them. The defendant was not a threat as
287 All Pro Wrestling projected him to be, the defendant was a threat to the exposure of
288 thier froudulent, scandalous, and unlawful ways and business practices. The defend-
289 ant was dissuaded not to sue or file a complaint. Any further prosecution against
290 him on the matter will be disputed as a perversion of justice, for the law must not
291 be used as a retaliatory offense by a mob of hoodlums! • The fact of the Burl-
292 ingame Police Department's negligent and prejudiced investigation of the defendant, an-
293 d his situation with the organization of All Pro Wrestling must not be concealed! The
294 truth holds the defendant's initial victimization by the affiliates of All Pro Wrestlin-
295 g. The civil rights violations suffered by the defendant, by both All Pro Wrestling and
296 the Burligame Police Department are made clear. The integrity of the court shall
297 be put in jeopardy, in which slavery is just, blackmail is tolerated, and malic-
298 ious vengeance is practiced and honored. All Pro Wrestling rewards cooperation
299 and punishes disobedience. The defendant will not be granted a fair trial. He
300 must not be prosecuted, nor this maliciously. Let All Pro Wrestling earn it's
301 desired publicity without using an innocent victim as their scapegoat. In an
302 interest of justice, the defense asks the court for the dismissal or quashing of
303 the indictment, and installation of a two-way restraining order.

— Marlon Estario Pagtakhan 10/7/07

page #35    646.9 Stalking any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and (who makes a credible threat with the intent to place that person in reasonable fear for his or her safety)

"kay-fabe"= * NEGATIVE MENS REA & NEGATIVE CREDIBLE THREAT

Justification    (e) "harasses" means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and serves no legitimate purpose. (legitimate purposes include:)

→    in (kay-fabe)        seeking              (kay-fabe)                    seeking
    ① Protest    ② Refund    ③ Replies (retaliatory remarks)    ④ Friendship

(F) "course of conduct" means two or more acts occuring over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct".

→    in (kay-fabe)        Seeking              (kay-fabe)                    seeking
    ① Protest    ② Refund    ③ Replies (retaliatory remarks)    ④ Friendship
    "protected"    "protected"                                "protected"

(g) "credible threat" means a verbal or written threat made with the intent to place the person that is the target of the threat in reasonable fear and made with the apparent ability to carry out the threat. Constitutionally protected activity is not included within the meaning of "credible threat".

→    In (kay-fabe)    Seeking              (kay-fabe)                    seeking
    ① Protest    ② Refund    ③ Replies (retaliatory remarks)    ④ Friendship
    "protected"    "protected"        "protected"                    "protected"

→    (kay-fabe)
    ⑤ Sportsmanlike Challenges (boxing/mma/wrestling) "protected"
    "indecent speech is protected under the First Amendment"

***    (unless altered) All evidence, texts/emails/voicemessages, will fall into
                        (SHOULD BE SUPPRESSED)
    one of the above "Constitutionally Protected" categories, unless
    misconstrued, forged, or false testimony.

Dispute #    Procedural defect violating "Due Process": upon the filing of a police report/complaint, an emergency protective order or temporary restraining order MUST have been issued a few months at least to the past. If otherwise, the investigating officer was negligent in a prejudiced investigation and deliberate delay in assertation of reasonable grounds is suspect, otherwise:

─    the protective/restraining order WAS NEVER SERVED. (the defendant could have been reasonably located)

─    the Burlingame Police Department did not use every reasonable means to enforce an emergency protective order/restraining order. (or:)

matter    ─    were either NEGLIGENT OR KNOWLEDGED of the harrasment of
of            the defendant by the plaintiff (APW & affiliates) which would constitute
fact        prejudice or "constructive entrapment".

        ✓ thus violating State and Federal Constitutions.

        this latter can not be disputed or denied, a probe can only
        support it, further prosecution would be unconstitutional of

Page + 50

31. Principals. All persons concerned in the commission of a crime, whether it be felony or misdemeanor and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging lunatics, or idiots to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed.

32. Accessories. Every person who, after a felony has been committed, harbors, conceals or aids a principal in such a felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony, is an accessory to such felony.

***  Principals : Boland Alexander, Jason Deedrich, Gabriel Ramirez, Kafu
Accessories : MacbiF, Melissa, Shannon Ramirez, Christopher Kelsey, Chris Cherolis Shane Mai (in regards to crimes made against me.)
Witnesses : Robert Thompson, Derek Sanders, Dana Lee, Joseph Rodriguez, Deyontee Newson, Lenny Thomas, Mario Camacho, Abraham Reyes, Jarett Reed, Matt, Doug, Dylan, Nate Rutz, Vince Shipman, Kristina Shipman (under lined may be accessories)

the word "person" includes a corporation as well as a natural person,
in this case _All Pro Wrestling v. the defendant_ is more
appropriate than "People of the State of California" for the fact that
A.P.W. is a scandalous mob of frauds profiteering from criminal act-
ivity under decieving aliases, and with regards that other than this
vendetta, _the defendant has been a tax paying law abid-_
_ing citizen of his community in this state._

*** Crimes of "All Pro Wrestling" against the State include    [other than those committed against the defendant by the principals and accessories above.]
("SEE ALSO PAGES 41 & 42") 186.2.(a)(2)(4)(6)(7)(12)(15)(17)(25)(28)
SEE ALSO PAGE 39) in the "People of the State of California    there is much
v. All Pro Wrestling"    potential.

the defendant would rather a thorough investigation be made which should result in ["United States v. All Pro Wrestling"] if of course, there were a federal probe into the organization's past and present, as well as into the Burlingame Police Department.

Note: the death of APW student Paul Ong "may have been a result of "stretching" which would constitute a felonious assault" neverth-eless it was clear PC192 (a) or PC192 (b) was violated by All Pro Wrestling", then covered up as an accident", as the thr-eats of "stretching" have been covered up this time around, denied by both Boland Alexander and kafu. (continued)

page #37

(continued) kafu at one point during a conversation via cellphone brought up the subject of "stretching", stating that in the past when he began training in All Pro Wrestling, "stretching" was practiced then but not today. kafu stated that had I been a student in those old days, they would have me show up to class day without warning and order Dalip Singh (WWE's the Great Khali), suprise me and beat me up. Dalip Singh was a student and graduate of APW, and with regards to kafu's statement, was a senior who performed "stretching" which is punishment. Dalip Singh, by command, killed Paul Ong. kafu stated that I had nothing to fear if I returned to APW, that they don't practice the punishment anymore, which contradicts "stretching" mentioned in orientation as well as threatened me during the office room trap. REF: MY DOCUMENTS/STARTOFITALL.TXT explains the situation and showcases Roland Alexander's denial. (evidence in saved emails) Something had caused the reasonable fear in me and my well being which resulted in my dropping out of APW, that was the hostile environment Roland Alexander, Gabriel Ramirez, and kafu created with the threats of this "stretching" which I suspect Jason Deadrich had a say in it as a mastermind.

✳ This was what the defendant was subject to after expressing his feelings for MsChif (Constitutionally Protected) shortly after completion of the 9/1/06 & 9/2/06 Kezar Pavilion shows, fearing punishment and abuse he dropped out.

[Relevant Citations]

- 8. Intent to defraud whenever, by any of the provisions of this Code, an intent to defraud is required in order to constitute any offense, it is sufficient if an intent appears to defraud any person, association, or body politic or corporate, whatever.
- 20. Crime To constitute crime there must be unity of act and intent. In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.
- 21a. Attempt An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.
- 27. Persons liable to punishment (a) The following persons are liable to punishment under the laws of this state: (1) All persons who commit, in whole or in part, any crime within this state. (3) All who, being without this state, cause or aid, advise, or encourage, another person to commit a crime within this state, and are afterwards found therein.
- ✳✳✳ In the crimes committed against the defendant shown in pages #30 thru 34, the above four citations are existent and UNDISPUTABLE.
- 133. Decieving a witness every person who practices any fraud or deceit, or knowingly makes or exhibits any false statement, representation, token, or writing, to any witness or person about to be called as a witness upon any trial, proceeding, inquiry, or investigation whatever, authorized by law, with intent to affect the testimony of such a witness, is guilty of a misdemeanor.
- 135. Destroying or concealing documentary evidence Every person who, knowing that any book, paper, record, instrument in writing, or other matter or thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully destroys or conceals the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor.
- 134. Preparing false evidence Every person guilty of preparing any false, or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty.
- 138. Witnesses; bribes (b) Every person who is a witness, or is about to be called as such, who recieves, or offers to recieve, any bribe, upon any understanding that his or her testimony shall be influenced thereby, or that he or she will absent himself or herself from the trial or proceeding upon which his or her testimony is required, is guilty of a felony.
- 146. Arrests/Seizures without Process Every public officer, who, under the pretense of color of

page # 5B
investigator,
accessories,
witnesses,
prosecuting party,
court appointed
counsel

**153. Compounding or concealing crimes.** Every person who, having knowledge of the actual commission of a crime, takes money or property of another, or any gratuity or reward, or any engagement, or promise thereof, upon any agreement or understanding to compound or conceal such crime, or to abstain from any prosecution thereof, or to withhold any evidence thereof, except in the cases provided for by law, in which crimes may be compromised by leave of court, is punishable as follows : (1) (2) (3)

**422.** Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and specific as to convey to the person threatened, a gravity of purpose and immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his own safety, shall be punished by imprisonment.

✱ ✱ ✱ (Roland has threatened the defendant with kafu. Kafu has threatened the defendant, and on one occasion did so mentioning 'having his 150 lb. dogs taking care of the dendant.")

**653m** (a) Every person who, with intent to annoy, telephones or makes contact by means of an electronic communication device with another and addresses to or about the other person any obscene language or addresses to the other person any threat to inflict injury to the person or property of the person addressed or any member of his or her family, is guilty (b) Every person who makes repeated phone calls or makes repeated contact by means of an electronic communication device with intent to annoy another person at his or her residence, is, whether or not conversation ensues from making the telephone call or electronic contact, guilty of a misdemeanor. (c) at place of work

✱ ✱ ✱ (Roland, Gabriel, Chris, Shane, Kafu, Vince or Kristine have all done the same above towards the defendant. Evident") note: Gabriel Ramirez's intention may also have been to flood the defendant's cellphone to eliminate evidence ex. "saved texts" violation of PC 135.

**1054.1 disclosure of materials to defendant** the prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies : (a) the names and addresses of persons the prosecutor intends to call as witnesses at trial. (b) statements of all defendants (c) all relevant real evidence seized or obtained as a part of the investigation of the offenses charged. (d) the existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. (e) any exculpatory evidence (f) relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjuction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial. • 1054. 3 (reversed)

✱ ✱ ✱ **1382 Failure to file information or bring case to trial within time limit [dismissal]**
(a) The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases : (2) in a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information, or reinstatement of criminal proceedings. (Eric M. Hove deliberately misrepresented the defendant and Dr. Sing presented a suspect report. fraud on the court.) time limit fraud grounds for dismissal

**1538.5 motion to return property or suppress evidence** (a)(1) a defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds : (A) The search or seizure without a warrant was unreasonable. (B) The search or seizure with a warrant was unreasonable because any of the following apply : (i) the warrant is insufficient on its face. (ii) The property or evidence obtained is not that described in the warrant. (iii) there was not probable cause for the issuance of the warrant. (iv) the method of execution of the warrant violated federal or state constitutional standards. (v) there was any other violation of federal or state constitutional standards. (many of the exibits SHOULD be suppressed as they are Constitutionally protected

note: or were "unconstitutionally seized". SEE PAGE # 35's ✱ ✱ ✱ regarding text/emails/voicemail

• 236.1 Human trafficking. Any person who deprives or violates the personal liberty of another with the intent to effect or maintain a felony violation of Section 518, or to obtain forced labor ser-es, is guilty of human trafficking. (d)(1) Unlawful deprivation or violation of the personal liberty of another includes substantial and sustained restriction of another's liberty accomplished through fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person recieving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out. (e) "forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, or coercion, or equivalent conduct that would reasonably overbear the will of the person.

Principals are <u>All Pro Wrestling</u> & <u>Black Pants Inc.</u>
Roland Alexander     Jason Deadrich

students of APW are subject to forced labor and services for APW and Black Pants Inc. by means of fraud, deceit, violence (stretching) and threat of unlawful injury (stretching).

– accessories are senior staff and senior wrestlers including Robert Thompson, Vince Shipman, Dana Nashibe, <u>Gabriel Ramirez (more of a principal)</u>

* Ignoring the crimes committed against the defendant as well as the above would be <u>Unconstitutional</u> and show apparent prejudice as well as gross and criminal negligence in a concealment, violating P.C. 24. (In example PC 153 Compounding or concealing crimes)

Exodus 20:16   Quran 2:86   Matthew 7:3-5

page #39
SEE FILES
STARTOFITALL.TXT
PARTIALREFUND-REQUEST.TXT
ALT.TXT on seized laptop. ALSO SUPPORTING EMAILS SAVED OFFLINE ON AOL SOFTWARE

SEE ALSO PAGES 38,41,42,49, 50, 30 thru 34

① SEE PAGES 4 and 23

## 5331. Evaluation on competency; effect statement of California Law

page #40

"No person may be presumed to be incompetent because he has been evaluated or treated for mental disorder or chronic alcoholism, regardless of whether such evaluation or treatment was voluntarily or involuntarily received."
(Art. 7 Legal & Civil Rights of Persons Involuntarily Detained)

※ The defendant contests Dr. Singh's report regarding his evaluation on his competency and believes it to be a prejudice, negligent and/or fraudulent report on grounds that the defendant answered all of Dr. Singh's questions accordingly, leaving no room for a negative report. It is apparent that Dr. Singh presumed the defendant to be incompetent because of his claims that he had been treated for a mental disorder involuntarily, though cooperatively, in the past, which are no grounds for declaring him to be incompetent, as stated in Article Seven's Legal & Civil Rights of Persons Involuntarily Detained citation 5331. It must be noted that Dr. Singh was made aware of the defendant's goal of exercising his right to a speedy trial. In her response, she asked the defendant if he would consider a six year plea bargain given the nature of the allegations, with an apparent presumption in her unprofessional demeanor that the defendant in her mind was guilty. The defendant stated again that he would prefer to invoke his right to a speedy trial. As opposed to the second doctor's positive evaluation, apparently more professional, Dr. Singh chose not to reveal her decision to the defendant, claiming she needed more research, noted to be done without the defendant. Her decision was more likely made before the interview.

matter of fact

In conjunction with court appointed counsel Eric M. Hove's repeated requests of having the defendant waive time, and his foretelling of a possible negative report from Dr. Singh, though unsure, it is apparent to the defendant that Eric M. Hove's misrepresentation doubting his competency, along with Dr. Singh's suspect fraud on the Court, was a deliberate and successful attempt to violate the defendant's Constitutional Right to a speedy trial protected by the Fed. Const. 6 and the Ca. Const 24 and 29. This misrepresentation and undue delay has been a critical blow to the defense, as there is no doubt to the court that the prosecution have been building their case during the suspended proceedings, all the while court appointed counsel for the defendant has done nothing but lie and insult the defendant with repeated broken promises. The Due Process clause has been violated and misconstrued, and prosecutorial delay has prejudiced the defendant to a fair trial.

## Rule 4.410. General objectives in sentencing

(a) General objectives of sentencing include:
(ITEM #50※) (1) protecting society
(2) punishing the defendant
(3) encouraging the defendant to lead a law abiding life in the future and deterring him or her from future offenses.
(4) deterring others from criminal conduct by demonstrating its consequences.
(5) preventing the defendant from committing new crimes by isolating him or her for the period of incarceration.
(6) securing restitution for the victims of crime.
(7) achieving uniformity in sentencing.

(b) Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case.

∴ FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.

※ I have read and understood the above statement.

**Note:** This was an isolated corporate affair and there should be no concern of public safety. The defendant is not dangerous and has no history of violence. In his community he does he abide the law and pay his taxes.

REF MY DOCUMENTS >> MOTOF IT ALL.TXT, > PARTIAL REFUND REQUEST.TXT

148.6(2) advisory form YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZEN'S COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS. IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS F-

**age #41**

186.21. The Legislature hereby finds and declares that it is the right of every person, regardless of race, color, creed, religion, national origin, gender, age, sexual orientation, or handicap, to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals.

186.22. (f) "criminal street gang" means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated, inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.

(e) "pattern of criminal gang activity" means the commission of attempted commission of conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occured after the effective date of this chapter and the last of those offenses occured within three years after a prior offense, and the offenses were committed on seperate occasions, or by two or more persons.

**※ ※ ※**  All Pro Wrestling, a "criminal street gang", have committed, attempted to commit, conspired to commit, have solicited, the following offenses on seperate occasions by two or more people :

- (1) assault by means of force likely to produce great bodily injury
- (3) unlawful homicide or manslaughter
- (4) the sale, possession, transportation, manufacture, offer for sale, of controlled substances
- (8) the intimidation of witnesses and victims
- (18) torture
- (19) felony extortion    (all will be further explained) and have
- (20) felony vandalism
- (24) threats to commit crimes resulting in death or great bodily injury

(a) any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished.

182.5 Participation in criminal street gang any person who actively participates in any criminal street gang, with knowledge that its members engage in a pattern of criminal gang activity, and who willfully promotes, furthers, assists, or benefits from any felonious criminal conduct by members of that gang is guilty of conspiracy to commit that felony and may be punished

**top members in suspected ranking"** —  President/Owner "the Godfather" Roland Alexander, Co-owner "Director of Operations" Jason Deadrich, Manager "booker" Gabriel Ramirez, thug/trainer/wrestler "the Enforcer" Kafu AKA Victor C., Supervisor trainer/wrestler Vince Shipman, "senior" Robert Thompson", 1st Lady "secretary" Shannon Ramirez, "senior referee" Kristine Shipman, "wrestler/whore/pawn" Melissa, "trainer/pawn" Dana Lee", "trainer/pawn" Derek Sanders", "production/pawn" Shane Mai, "production/pawn" Chris Kelsey, "wrestler/whore/pawn" McChif, other staff/students/affiliates fall under pawns in heirachy.

APW's offenses include (but are not limited to): (not including those earlier stated)

page #42
- (1) attempted to commit assault against defendant (office trap)
- (1) conspired to commit assault against defendant (office trap)
- (1) conspired to commit assault against defendant (invitations back to APW)
- (1) solicitation of assaulting the defendant (kafu asking Roland for permission and address)
- (1) solicitation of assault (orientation, office trap, "stretching")
- (1) have committed assault (admittance by trainers of past physical punishments)
- (3) Dalip Singh's manslaughter of Paul Ong (possible punishment, Dalip Singh punished students)
- (4) kafu is on steroids (as warned by Joseph Rodriguez & Lenny Thomas)
- (4) Lenny Thomas offered for sale (stating he had connections through APW)
- (8) those who don't cooperate or obey APW orders will be disciplined and/or punished
- (18) the actual "stretching" or punishment IS TORTURE
- (20) kafu stomp-kicking road sign (he was hurting in a gym wars match, in a possible intimidation attempt as the defendant is posted outside for security, kafu waltzes across the street and jump-stomp-kicks the road sign, Billy Blade following him is also a witness) 594 vandalism
- (24) Roland has threated the defendant with kafu numerous times (orientation/office/via phone)
- (24) Roland has at least twice invited the defendant to fight kafu, claiming kafu would destroy him
- (24) kafu has threatened the defendant with his 150lb. dogs (via text messages)
- (24) kafu has threatened to beat up the defendant (via phone / via text messages)
- (24) kafu has (in front of other students) asked for permission and the home address of the defendant from Roland, stating he wanted to visit the defendant and to teach the defendant a lesson. (see above solicitation of assault)
- (19) as previously stated/explained, Roland & APW extorting/blackmailing the defendant

It is criminal to conceal the above.    malicious prosecution (criminal) "fraud & lies"   vs.   the defense (victim) simple "truth" liberty & justice

※ REFERENCE: PAGES # 30-34

"undisputable" argument

UNDER ALL THESE CIRCUMSTANCES MENTIONED THUS FAR, AND THOSE TO BE REVEALED FURTHER, PROSECUTION WOULD PERPETRATE A DENIAL, RE-UNCONSTITUTIONAL, CONSTITUTIONAL LAWLESSNESS, AND BE NONE OTHER THAN MALICIOUS.

- 13519.05. Stalking; training course and guidelines (guidelines were more than likely, NOT FOLLOWED) "in the training of law enforcement in California in the handling of stalking complaints and also develop guidelines for law enforcement response to stalking .. '"guidelines shall stress enforcement of criminal laws in stalking situations, availability of civil remedies and community resources, and protection of the victim."

- Ca. Constitution Amendments: 7. (a) "a person may not be deprived of his life, liberty, or property without due process of law or denied equal protection of the laws" 12. "excessive bail may not be required" 15. "the defendant in a criminal cause has the right to a speedy public trial, to compel attendance of witnesses in the defendant's behalf, to have assistance of counsel, the defendant's defense, to be personally present with counsel, and to be confronted with the witnesses against the defendant."

- 314. lewd or obscene conduct "kafu" every person who willfully and lewdly, either: 1. exposes his person or private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or, 2. procures, counsels, or assists any person so to expose himself or take part in any model artist exhibition, or to make any other exhibition of himself to public view, or the view of any other number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts, is guilty of a misdemeanor.

Motives of APW & it's affiliates (truth is bold)

- **Cover-up** for their civil and criminal violations of law*
- **Cover-up** for the victimization of the defendant by those violation
- **Greed of money**∗
- Promotion of their school (**Publicity**)
- **Revenge** for the defendant's whistleblowing
- **Sadistic leisure**∗   * (may be)

**Page #43**

<u>moral turpitude</u>: 1) Conduct that is contrary to justice, honesty, or morality. • In the area of legal ethics, offenses involving moral turpitude — such as fraud or breach of trust — traditionally make a person unfit to practice law. Also termed moral depravity.

<u>fraudulent act</u>: conduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude. Also termed dishonest act;

<u>malpractice</u>: an instance of negligence or incompetence on the part of a professional. To succeed in a malpractice claim, a plaintiff must also prove proximate cause and damages.

<u>legal malpractice</u>: a lawyer's failure to render professional services with skill, prudence, and diligence that an ordinary and reasonable lawyer would use under similar circumstances.

<u>6106. Article 6 Disciplinary authority of the courts</u>
(a) conviction of a felony or misdemeanor, involving moral turpitude, constitutes a cause for disbarment or suspension.

(SEE PAGE # 48 & 54) <u>Fruit of the poisonous tree doctrine</u>: the rule that evidence derived from an <u>illegal</u> search, <u>arrest</u>, or interrogation is inadmissible because the evidence (the "fruit") was tainted by the illegality (the "poisonous tree") POISONOUS TREE DOCTRINE / FRUIT DOCTRINE

✱ <u>Deprivation of the right to a speedy trial</u> (ARGUMENTS)

(ALL THREE OF THE ELE-MENTS HAVE BEEN MET)

① length of the delay (days from arraignment/arrest)

② reason of the delay (a fraudulent act, moral turpitude, misrepresent-ation, fraud on the court – suspect evaluation/malpractice)

③ prejudice to the accused (discrimination/damages in defense, impair-ing the defendant to a fair and impartial trial, lost evidence/witnesses)

• • • — • • — • • — • •

(defendant plea offer)
• <u>412: Boxing "unlicensed challenge"</u> (appropriate misdemeanor)

evidence voicemessages/conversation/2 pairs of 18oz. pro sparring gloves

• <u>415: Fighting, noise, offensive words</u> (appropriate misdemeanor)
any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both imprisonment and fine.
1) any person who lawfully fights in a public place or challenges another person in a public place to fight.
2) any person who maliciously and willfully disturbs another person by loud and unreasonable noise.
3) any person who uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction.

<u>REF: BUSINESS AND PROFESSIONS CODE 18600 & 18750 "BOXING/WRESTLING/MARTIAL ARTS"</u>

(REASONABLE →) <u>The defendant will only "consider" the above charges along with</u>

<u>annoying phone calls/messages 653m (misdemeanors) as follow:</u>

Counts:
① 412 Boxing victim: "kofu"

② 415 Fighting, noise, offensive words victim: "kofu"

③, ④ & ⑤ 653m annoyance victims: "kofu" "Roland" "Jason"

✱ sentence: 1. time served, 2. misdemeanor probation, 3. fine, 4. 2-way restraining order

**page #44**

concurrent negligence: the negligence of two or more parties contributing to the ultimate harm.

gross negligence: extreme negligence, acts committed with utter disregard for the consequences, punishable by punitive damages.

negligent infliction of emotional distress: the act of inflicting emotional distress on another by one's negligent act.

(SEE PAGES #30 -34, 46-47, 52, 53-54)
• Due process is violated if the government's unreasonable and unexplained delay in charging a defendant with a crime substantially impairs a defendant's ability to mount a defense.

• Due process requires the government to disclose to the defense exculpatory information — that is, information tending to show that the defendant is not guilty.

(SEE PAGES #5, 35 dispute, 54, 270a) argument)
• Due process is violated if the government entraps a defendant into committing a crime.

• Due process requires judges to instruct juries that defendants are presumed innocent of the charges against them.

• Due process may be violated if a prosecutor's arguments are repeatedly factually erroneous, and so angry and intemperate that they prevent the trial from being fair.

• Due process requires that a defendant's guilt be proven beyond a reasonable doubt.

• Due process requires that defendants have a fair opportunity to present evidence. Rules that unduly impinge on that right, for example by preventing a defendant from offering evidence that another person committed the crime with which the defendant is charged, are invalid.

mitigating circumstance: a factual matter argued in defense that may lessen a defendant's liability or culpability, resulting in lesser damages or a shorter sentence.

• The offender has little or no history of criminal conduct.

• The offender committed the crime when under great personal stress, for example had lost a job, rent was due, and had just been in a car wreck.

• No one was hurt, and the crime was committed in a manner that was unlikely to have hurt anyone.

FAMM is a national group that advocates on behalf of prisoners in the sentencing process. info@www.famm.org

• **motion to modify bail** the defendant may bring new circumstances to the judge's attention in a motion to reduce bail.

• **motion to dismiss complaint** (for vagueness or improper jurisdiction) a criminal complaint must specify the crime(s) charged, the defendant(s) accused of such crime(s), and the authority for the prosecution to make such charge(s). The complaint must also allege that the defendant committed each and every element of the crime(s) charged.

• **motion for Bill of Particulars** to learn the basis of the formal charge the defendant faces — will order the prosecutor to describe with particularity just what the defendant did wrong.

• **motion to reduce charges** motion to reduce charges in a preliminary hearing to applicable misdemeanors.

• **motion for a change of venue** asking the judge to relocate case to a different location, asked sometimes when excess pretrial publicity makes it difficult to find unbiased jurors.

• **motion to strike a prior conviction** to reduce the severity of charges. The most common reason for a judge to strike a prior conviction is a procedural irregularity or constitutional violation associated with the prior conviction. For example, the defendant may have been denied counsel at a critical stage of the case that resulted in the prior conviction, or the defendant may have entered into a plea bargain unknowingly or because of coercive practices by the police. Sometimes defense counsel can convince the judge in the current case, that fairness requires the prior conviction to be disregarded — struck — where the defendant has since engaged in a long period of good behavior or formal rehabilitation.

• **motion for discovery** to find out information in prosecutor's files, reports/statements.

• **motion to preserve evidence** to force prosecutors to keep evidence safe.

• **motion to disclose identity of an informant** to find out whether the prosecution is relying on a government informant by filing a Motion to Disclose Identity of a Confidential Informant. Attack credibility of witness who gave info, defense (free to try a may-produced damage)

**xage #45**

- <u>motion to Examine Police Personnel File</u>. when a police officer's past history is relevant to the defense, the defendant may gain access to portions of the police officer's personnel file." If successful, the defense can review the file to determine whether the officer has been implicated previously in any wrongdoing. The record may reveal that the officer has been reprimanded in the past for use of excess ive force, planting evidence, or exhibiting racial prejudice. The defense may then use this information to deflate credibility and weaken the prosecution's case.

- <u>motion to suppress evidence</u> to exclude improper evidence. an improperly obtained confession, an improper search or arrest, or seizure. (incompetent evidence)

- <u>motion for speedy trial</u> the defense can file this motion to force the prosecutor to abide by rules limiting the amount of time that can pass before the defendant is brought to trial.

- <u>motion(s) in limine</u> "at the very beginning" to prevent the jury from ever hearing about evidence that the judge rules inadmissible. can be made written or orally. neither the prosecutor nor prosecution witnesses can refer to the evidence.

**✳ <u>motions involve 3 distinct stages</u>:**

a) <u>giving notice</u> (advising an adversary that you are making a motion) most jurisdictions require that the notice and accompanying papers:
- identify the specific order a party wants the judge to make.
- explain the facts giving rise to the motion (in writing, in the form of an affidavit or declaration under penalty of perjury), and
- explain the legal basis for the request in a document that is sometimes called a memorandum of Points & Authorities
This document resembles an appellate brief, and may consist of many pages of legal arguments and case citations.
b) <u>hearing the motion</u> during the hearing, each party has a chance to make oral arguments that may convince a judge to grant ("sustain") or deny the motion.
c) <u>Judge's ruling</u> the judge hearing the motion may rule immediately after the argument, or the judge may "take the matter under submission" and issue a ruling days, even weeks later. In complex situations, the judge may invite the parties to submit further written legal arguments before making a ruling.

**✳ <u>Books I will need</u>:** (the ones checked A.S.A.P.)

✓ 1. ~~Black's Law Dictionary (West Publishing Co.)~~

✓ 2. West's California Criminal Defense Motions Forms Manual (~~West~~ Publishing Co.)

✓ 3. West's California Criminal Procedure (<u>West Publishing Co.</u>)

✓ 4. West's California Criminal Trial Book (<u>West Publishing Co.</u>)

✓ ~~5. Represent Yourself in Court: How to Prepare & Try a Winning Case~~
   (code: RYC www.nolo.com)

~~6. California Evidence Code (add this if you can find it)~~
   <u>Barnes & Nobles</u> (online) or <u>Amazon.com</u> (brand new) & / or nolo.c

• — • — • — • — • — • — • — •

to find legal arguments, case citations, and laws/judgements, research the encyclopedia <u>California Jurisprudence 3d</u>, <u>lexis.com</u>, <u>westlaw</u> or <u>versuslaw.com</u>.

page #46: Fraudulent Acts / Malpractice / Prejudice, (Fraud on the court.)

I DECLARE UNDER PENALTY OF PERJURY THAT THESE WERE THE VERY WORDS OF THE TWO DOCTORS.

● Dr. Singh: " You're very articulate and smart and I believe you can help your lawyer in your defense, but there may be an issue with your health, there can be a disease."

UNDER ARTICLE 7 citation 1331, there were no grounds for Eric M. Hove's doubt, nor with Dr. Singh's and Dr. Samuel's statements, any reason to deem the defendant incompetent.

● Dr. Samuel: "Well- you're competant enough to stand trial but (following was incomprehensible as I shake his hand, deputy present).."

● Note: On 9/26/07 Eric M. Hove assures I will recieve a fair evaluation as the new doctor assigned is "one of ours" (the defense's) and that he (Eric) knows him. This disputes credibility to Dr. Singh's report and Eric M. Hove will later contradict this statement.

10/23/07 Late afternoon, I am finally visited by Eric M. Hove. He finally returns the documents (originals) that I had asked him to copy for me. I am disappointed as he hasn't even utilized the information I gave to him. When I inquire of what information he or Omar has gathered in their investigation of All Pro Wrestling, he answers nothing. Though he had promised to investigate my case, he admits he and Omar have done nothing. He continues to insist that I waive time, and (I feel) plays dumb that he isn't aware if I had my third evaluation or not. Eric M. Hove tells me that the doctor will see me this evening. I am disappointed in his misrepresentation, of him presuming me incompetent, of his broken promises, lies, and failure to deliver repeatedly requested information. I'm upset at him and curse. He apologizes but also threatens me that he is the last person I should disrespect. Getting angry with me, he claims he has been around and is also a fighter. (In a way, sizing me up) I apologize and state my frustration, adding that I am aware of him being a district attorney prosecutor in the past, but that he should not threaten me.

(He leaves. As soon as I close my cell door about two minutes later, I'm called to my evaluation with Dr. Samuel. I BELIEVE THAT THEY HAD COME TOGETHER.)

(3rd eval) ✱ Dr. Samuel interviews me (entirely) mainly speaking of and quoting sections of the (fraudulent and falsified) police report, evaluating my reactions or justifications. After the short evaluation, in the presence of a deputy, he answers that I am competent to stand trial. (stated above)

10/24/07 (before court appearance) Eric M. Hove lets me know that the third evaluation is a negative, and that I will be further assessed by the court for treatment. I am surprised at the revelation and do not agree with it. Eric M. Hove tells me that I may stay in county jail or be taken to a hospital for treatment till I regain competency. Disappointed, I truly believe this would not be the case had I waived time, as he had continued to beg. I hand him documents #26, 27(a), 27(b), 28, 29(a), 29(b), 30, 31, 32, 33, 34, 41, 42, 43, which should contradict my presumed incompetency.

✱✱ I MAKE AN ORAL MOTION FOR A MARSDEN HEARING ON GROUNDS OF A MISREPRESENTATION AND FRAUD ON THE COURT.

argument: (I was framed up by the Burlingame Police Department working alongside with All Pro Wrestling, and I have reason to believe court-appointed counsel will only conceal that matter.

10/24/07 In the late afternoon, Eric M. Rove visits me along with our assigned investigator Omar. Assuring me repeatedly that he is not angry with me for requesting a marsden hearing, he claims that he will continue to work on and investigate my case to the point of relieving him. I give him names of witnesses that may testify on APW's corrupted practices. I accuse him of concealing the fact that he and Dr. Samuel arrived the day before together. ✱ He then claimed that he did not know Dr. Samuel personally, and that he's only seen his reports, not having any influences as to any results. He contradicts himself on previously stated acquaintance. County surveilance videos or visiting logs may prove he is a liar, "untampered."

( HE DOES ADVISE ME THAT I'VE THE RIGHT TO REFUSE MEDICATION AND THAT I MAY BE PRESCRIBED SOME TO BE TREATED FOR PSYCHOSIS. __DEFAMATION ATTEMPT__ )

__MALPRACTICE/__
__PREJUDICE__

I explained to Dr. Sing I felt I was originally misdiagnosed by Dr. Sbarma (LA County) in '01, and later (forced by probation) by "business influenced" Sue Scoff (of Concord, $150.⁰⁰/bi-weekly) and Douglas Tucker (of Berkely, $250/monthly after bi-weekly for initial 2 months) whom I was a patient for a period of nine (about) months, paying for my own medication the prescribed zyprexia. (about $200/monthly)

this maltreatment was paid for by my own hard-earned money when I unloaded trucks at Wal-Mart.

- _Allegedly_ __I was cured__, ~~the treatment and only cooperated.~~ though I feel I never really needed

✱✱ I've been off medication for five years and feel, and truly believe, that I've been deliberately misdiagnosed in a malpractice by Dr. Singh and/or Dr. Samuel. Psychosis is a serious mental illness which involves psychotic and premeditaded thoughts and intentions to commit acts, symptoms which include voices being heard by the individual, and the individual having conversations with those voices. __I never had psychosis!__ _nor do I have/suffer it now_

✱✱✱ I have stated nothing to both Dr. Singh and Dr. Samuel that should even give them an assumption of possesing the disease. Both their evaluations may not have been conducted in the appropriate manner. Instead, they chose to reveal the fraudulent complaint and falsified police report which I still have not recieved copies of after repeated requests.

__WHY I WILL__
__REFUSE ANY__
__MEDICATION__

1. Prior to my false arrest, I was living independantly, working with supervising responsibilities as a foreman/and truck driver for a moving co..

✱ 2. I've been off medication for 5 years.

✱ 3. I've been in total sobriety for over 1 year. (including tobacco)

✱ 4. It is against my dicipline and religious beliefs to take any mind altering substances.

5. I am an athlete training to become a licensed boxer.

6. I DON'T NEED IT! (unmolested by injustice)

→ REASONS 2, 3, & 4 SHOULD SUFFICE. ←

( Evident fraud, conspiracy, misconstrued evidence and malice. )

**\* The police report was FALSIFIED** (by the detective) <u>and /or com-</u>

page #48

<u>committed under perjury by the affiliates of All Pro Wrestling.</u>

(point 1) **\*** the defendant **WAS NOT** arrested "in the action of picking a Fight"

as of 11/7 the defendant still has not recieved a copy of the complaint and police report as requested

<u>as stated</u> (report read by Dr. Samuel). • The detective admitted coaching Roland Alexander and Shannan Ramirez to call and text the defendant a truce, promising to return his tuition of $2,000, inviting the defendant to pick up the cash and sign a contract of a release from All Pro Wrestling. <u>The fraudulent report of intent displays malice and constitut-</u> <u>es entrapment.</u> (REF: PAGES 30-34 #5, #35 Disputes matter of fact)

(point 2) **\*** <u>from April '06 through September '06, the defendant did not th-</u> <u>reaten by the way of text, emails, or phone calls, any one of</u> <u>the victims, let alone "repeatedley," nor did he daily harrass</u> <u>sexually, Melissa or MsChif.</u> This is a false claim or perjur-

Evidence exists in APW videos, of the defendants participations in the shows.

ed statement and the defendant challenges the prosecut- ion to provide credible evidence. <u>The defendant was a</u> <u>member of APW, and friends /aquaintances with the alleg-</u> <u>ed victims at those times.</u> So he had believed! (liars, back- stabbers)

(point 3) **\*** <u>evidence has been deliberately misconstrued in a fraudulent act</u> <u>to maliciously persecute the defendant.</u> The defendant nev- er threatened any female. Many messages were directed to Roland, Jason, Kafu, <u>the other alleged victims were</u> <u>only sent carbon copies in protest to prove a point.</u>

(point 4) **\*** <u>some evidence has either been forged, doctored, or sent by a</u> <u>3rd party via hacked account,</u> as the defendant honestly doesn't remember at least two messages that is being cl- aimed he sent. <u>Note:</u> His email accounts had evidence of 3rd party abuse. Some examples include inconsistencies with NEW or READ mail counts, spam email, unsolicited sexual messages, and failed recep- tions of emails from APW & affiliates. **\***photos of cell phone text messages can be easily doctored. "uncredible"

page #49

The entire prosecution is based on fraud, and will continue to persevere on fraudulent acts and material, as the simple truth is that the defendant was induced, framed, and violated by the Burlingame Police Department working in conjuction with a scandalous mob, All Pro Wrestling, and the county including court appointed counsel, may do nothing but conceal this matter of fact. I've already been publicly slandered, and in the prosecution's denial, they only move to maliciously prosecute me.

* this is the email in which the defendant spoke of his previous case and how he was misrepresented and maliciously prosecuted, which then led to the APW office-room trap, in which the defendant was threatened with physical punishment and repeatedly picked on by kafu

* other "possible" motives behind malicious prosecution

likely. ① Revenge and/or influence by/for Rhonda Saunders, over written words against her by the defendant. (email to APW) * "constitutionally protected"

likely. ② Revenge and/or influence by/for Kevin Sleeth, over written words against him by the defendant. (email to APW) * "constitutionally protected"

matter of fact, and a discovery come to light with study of law and the criminal system.

③ The defendant is a key witness to an appeal which will expose the fact that 2 different males (persons) testified as the same person (male victim), during the preliminary and trial hearings of Valenzuela, San Mateo County, '03. I spoke this before, but in a denial. (NEW DISCOVERY/REALIZATION

One of which, when peacefully approached by the defendant at an NA convention held at the Crowne Plaza in Foster City, denied being the victim but "knowing who he (the defendant) was talking about. That the guy was from Daly City and not him." The defendant simply shook his hand and stated it was wrong what he did. A short while later, the suspect (imposter or actual alleged victim) approached the defendant picking a fight, asking if the defendant had a problem with him (minding an object in his waist), then exclaiming "there was a baby in the car!" refering to a mutual road rage incident were Valenzuela was tauntited by him along with racial slurs, unaware that the instigator of the incident had a toddler on board (a crime itself). The wife of the racist was also aboard screaming racial slurs and taunts. This suspect testified at the preliminary hearing of Valenzuela (as the victim). The other suspect (a different person) testified as the victim during trial. The defendant has witnessed both of the suspects. In union, the First (above) a joker, resembling Fred Durst (singer of Limp Bizkit) named Harry (from what the defendant recalls), the second was a darker haired caucasion of the "same" build, seen with his wife and child whom possibly drove a dark or black SUV, he resembled the musgle of WWE (midget wrestler) in facial features, in acquintance on more than one occasion at various N.A. meetings and functions. The two could be brothers, cousins, or simple friends. One thing is certain, in the case of the People v. Valenzuela, due process was violated with false testimony and fraudulent misrepresentation of a victim which should constitute a reversal in conviction, could the two be brought together and simultaneously questioned. The defendant clearly remembers suspect 1's preliminary testimony as he sat nervously but stated defiantly, "I'm not scared of that man!" (or the like of the latter) in an angry voice. Suspect 2 had a more calm and relaxed demeanor during trial (for the small part the defendant witnessed).

Racism is still expressed in hateful ways today in America, and in partial justice, has undermined the integrity of our judicial system.

note: The defendant mentioned this "prejudicial wrong" of his cousin to the detective on the ride to Burlingame. Reading and studying of law, he has now only come into the seriousness and realization of the matter.

- intentional infliction of emotional distress: the tort of intentionally or recklessly causing another person severe emotional distress through one's extreme or outrageous acts. • In few jurisdictions, a physical manifestation of the mental suffering is required for the plaintiff to recover.

__page #50__

- emotional distress: a highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering. • Emotional distress, when severe enough, can form a basis for the recovery of tort damages.
- cruelty: the intentional and malicious infliction of mental or physical suffering on a living creature, esp. a human; abusive treatment

(SEE PAGES #30 +thru 34)
- breach of duty: the violation of a legal or moral obligation; the failure to act as the law obligates one to act; a fiduciary's violation of an obligation owed to another.

(SEE PAGE #53)
- abuse of process: the improper and tortious use of a legitimately issued court process to obtain a result that is either unlawful or beyond the process's scope.
- malicious accusation: an accusation against another for an improper purpose and without probable cause.

(SEE PAGES #47, 53)
- maltreatment: bad treatment resulting from ignorance, neglect, or willfulness.
- missing-evidence rule: the doctrine that, when a party fails to present evidence at trial that the party controls and that would have been proper to present, the jury is entitled to infer that the evidence would have been favorable to that party.

(SEE PAGE #6)
- tampering: the act of altering a thing; the act of illegally altering a document or product such as evidence.
- invasion of privacy: an unjustified exploitation of one's personality or intrusion into one's personal activity, actionable under tort law and sometimes under constitutional law. • The four types of invasion of privacy in tort are (1) an appropriation, for one's benefit, of another's name or likeness, (2) an offensive, intentional interference with a person's seclusion or private affairs, (3) the public disclosure, of an objectionable nature, of private information about another, and (4) the use of publicity to place another in a false light in the public eye.
- frame: (1) to plan, shape, or construct; to draft or otherwise draw up (a document) (2) to incriminate (an innocent person) with false evidence, fabricated.

(SEE PAGE #54)
- frame up: a plot to make an innocent person appear guilty.

✱ _There's nothing to be gained for the people of San Mateo County to prosecute the defendant. The company (criminal mob) of the alleged victims (affiliates of APW) are residences of other counties. Having suffered cruelty and emotional distress by those alleged victims, the defendant was reduced to begging for justice[1], a truce[2], or closure[3]. Prejudged and prejudiced by a perjured complaint and falsified police report, there can be no legal or natural justice in the prosecution of the defendant._

[1] For a release from APW contract and a partial refund.
[2] a truce to put the past behind, including a letter of "truce", and a return to APW.
[3] to settle the matter in mutual, reconciled consent as invited or with those behind the conspiracy, also as invited.

page #51    10/23/07 "back-to-back" visits from Eric M. Hove & Dr. Samuel

*Moral Turpitude *Fraudulent Act • (Legal) Malpractice.

*PLEASE SEE PAGES #46 & 47 REGARDING THIS FIGURE

DEFAMATION AND
MALTREATMENT
RESULTING

(damages)

① defamation &
slander re: report
relay to Daily
Journal & San
Mateo County
Times.



(5th FLOOR UPPER)

• Eric M. Hove (more than
likely) influenced Dr. Samuel
to give a negative report after
the defendant's disappointment in
him and a refusal to "waive time".
✓ THE DEFENDANT'S RIGHT TO A SPEEDY
AND IMPARTIAL TRIAL HAS BEEN VIOLATED!

KEY: E = elevator
Ⓗ = Eric M. Hove
Ⓢ = Dr. Samuel
→--← = entrance/exit
(possible) path of subjects

*(Intake)

(GROUND FLOOR)

*(main exit)

NOTE: DEFENDANT'S ESTIMATED RENDITION



"THE RIGHT TO A SPEEDY TRIAL IS EQUAL TO THE RIGHT OF RELIGION, YOU DO NOT FORBID ONE HIS RELIGION, AS YOU MAY NOT FORBID ONE HIS RIGHT TO A SPEEDY TRIAL." - Marlon Estacio Pagtakhan

NOTE: DEFENDANT'S ESTIMATED RENDITION

KEY:   Ⓜ = defendant

(Ⓔ) = Eric M. Hove (greeting)

(conversing) { Ⓓ = female deputy D.A.

Ⓘ = investigating officer

1X = where Eric stands after greeting defendant

Ⓘ = meeting with D.A. before case is called, walking in unison out of the courtroom

2X = D.A.'s proceeding position in return with counsel

3X = counsel's proceeding position after returning in unison from out-of-court meeting with D.A.

✱ Doubt is fraudulently declared under an illegal misrepresentation by court appointed counsel working in the interest of the prosecuting party, thus violating and initiating more violations, of the defendant's civil rights.

page*53  In dispute of illegal transfer to a mental facility. (fraud)

- see also court transcripts of 10/24/07 & 11/16/07 case proceedings (addition to prior)

EC.§177. Dependant person means any person who has physical or mental impairment that substantially restricts his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities.. "Dependant person" includes any person who is admitted as an inpatient to a 24-hour facility,

* The defendant is not a dependant person, nor does he suffer a mental impairment.

• In dispute of the slanderous material released by the district attorney in August '07, the defendant WAS NOT LIVING WITH HIS PARENTS. The defendant was an independant individual renting his own apartment. (the assumption was released by the D.A. in accordance to an application for counsel the defendant filled out in which he listed his own parents as 'his' financial 'dependants'!)

• The defendant is employed as a truck driver and foreman for a moving company, in which at times, he supervised crews of up to six laboring men. A dependant person, as described above, would not be able to hold such a position of employment, nor would he be able to deal with the situations a variety of customers would initiate. (pre-preliminary hearing!)

** The district attorney's pretrial defamation of character and slander of the defendant in their malicious prosecution of the defendant (prosecuting party) is clear. They prescribed the misdiagnosis and malpractice of Dr. Singh. Eric M. Hove (former prosecutor with apparent loyalties) influenced the negative report of Dr. Samuel for the fact of the defendant's refusal to waive time after his repeated begging also has failed to begin investigation on the defendant's case (according to private investigator "Omar" as of 11/30) after repeated promises to do so. A cover-up of the gross fraudulent activities is apparent, as court appointed counsel refuses to disclose (to the defendant) the complaint and the police report, (perjured and fraudulent), as well as the fraudulent (competencey test) results report of Dr. Singh and Dr. Samuel. The defendant is being oppressed in "illegal detention" and is being denied (in an attempt of concealment) the requested and overly due information. Manifesta probatione non indigent.



page #54

Timeline(s) — *Lex reprobat moram.* (The law disapproves of delay.)

12/05   7/06   9/06   2/07   8/07   12/07   FUTURE

affiliation w/ APW

student at APW

• harassment by APW (& blackmail)    (entrapment)

illegal detention

prosecuting discovery (possibly sooner)

*In January '07 the defendant filed a harrasment complaint with the B.P.D. SEE PAGE 30 lines 25 – 47.*

① defense discovery?

TO JURY TRIAL

1ST Bar = the time the defendant was affiliated with All Pro Wrestling.

2nd Bar = the time the defendant was a student.

3rd Bar = the time the defendant was harrassed by APW affiliates.

4th Bar = the official *illegal detention* of the defendant.

5th Bar = investigation, prosecuting discovery and preparation for trial.

6th Bar = as of 11/30/07, court appointed ① counsel has made no attempt in discovery as repeatedly promised, and has made no effort in assistance to the defendant. (according to court appointed investigator Omar whom visited the defendant in the afternoon of 11/29/07 claiming Eric M. Hove sent him to deliver the message that the defendant would be attending court the next day and sent to Atascadero State Hospital on 11/30/07. The defendant requested a copy of the fraudulent police report yet again, but Omar claimed he needed permission from Eric M. Hove and would bring one the next day if given so. It is 12/3/07 and the defendant has yet to recieve a copy of the complaint and police report as repeatedly requested.)

FRAUD

REF: STARTOFTAIL.TXT, PARTIAL REFAND
REQUEST.TXT, LAST.TXT, PAGES #5, 12, 13,
14, 22, 23, 24, 25, 27(a)(b), 28, 29(a)(b),
30-34, 42, 53

• Incitement – (1) the act or instance of provoking, urging on, or stirring up. (2) the act of persuading another person to commit a crime. NOTE 3rd Bar above.

* Assertation of the right to a speedy trial. (& invocation)   SEE PAGE #28

(not limited to) 8/11/07 during booking, ① defendant states he is not guilty and will seek a speedy trial. 8/22/07 ② the defendant makes it clear to counsel he wants to invoke his speedy trial right. 9/xx/07 ③ the defendant states to Dr. Singh he wants(ed) a speedy trial. 11/16/07 ④ the defendant objects and addresses counsel's misrepresentation and fraudulent competency results denying his right to a speedy trial, and personally invokes speedy trial right.

① Nullus justa alienum
For justiciare potest.

page #55

• E.C. §1370 Threat of infliction of injury. (b) Circumstances relevant to the issue of trustworthiness include, but are not limited to, the following: (1) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested. (2) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive. (3) Whether the statement is corroborated by evidence other than statements that are admissible only pursuant to this section. (c) A statement is admissible pursuant to this section only if the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement.

✱ Regarding (1), File motion to disclose identity of an informant to attack credibility of witness who has some sort of gain (money or reduced charges). DUE INFLUENCE
✱ Regarding (2), SEE PAGES # 5, 33 lines 218-236, 39, 41-42, 48, 54. CONSPIRACY
✱ Regarding (3). MUST COMPLY UNDER EC §1520 ONLY SECONDARY EVIDENCE IS INADMISSIBLE
✱ Regarding (C) THE DEFENDANT DEMANDS DISCLOSURE OF ALL EVIDENCE PRIOR PRELIM.

• E.C. §1520 Content of writing: proof. The content of a writing may be proved by an otherwise admissible original. ✱ Emails and text messages MUST be electronically saved. (Though they may also have been sent by a third party, or forged/hacked.) ✱ Photocopies, printouts of emails and text messages are secondary evidence, and are most easily forged/fabricated. SEE PAGE #33 lines 240-264, 48

• E.C. §1521 Secondary evidence rule... The court shall exclude secondary evidence of the content of writing if the court determines either of the following: (1) a genuine dispute exists concerning material terms of the writing and justice requires the exclusion. (2) Admission of the secondary evidence would be unfair. (b) Nothing in this section makes admissible oral testimony to prove the content of a writing if the testimony is inadmissible under Section 1523. (c) Nothing in this section excuses compliance with Section 1401. ✱ Re. (1), SEE PAGE #35. ✱ Re. (2), evidence of APW's harassment of the defendant via text messages & phone calls were destroyed by the alleged victims, SEE PAG #39. 653m ✱✱✱ "and admittance would violate EQUAL PROTECTION" and be PREJUDICIAL.

• E.C. §1522 Additional grounds for exclusion of secondary evidence... in a criminal action the court shall exclude secondary evidence of the content of a writing if the court determines that the original is in the proponent's possession, custody, or control, and the proponent has not made the original reasonably available for inspection at or before trial. This section does not apply to any of the following: (1) a duplicate as defined in §260 (2) A writing that is not closely related to the controlling issues in the action. (3) A copy of a writing in the custody of a public entity. (4) A copy of a writing that is recorded in the public records, if the record or a certified copy of it is made evidence of the writing by statute. (b) In a criminal action, a request to exclude secondary evidence of the content of a writing, under this section or any other law, shall not be made in the presence of the jury. ✱ Re. (b), THIS MUST BE ARGUED DURING PRELIM & PRETRIAL.

• E.C. §1523 Oral testimony of the content of a writing; admissibility. (a)..oral testimony is not admissible to prove the content of a writing. (b) Oral testimony of the content of a writing is not made inadmissible.. if the proponent does not have possession or control of a copy of the writing and the original is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence. (c) Oral testimony of the content of a writing is not made inadmissible if the proponent does not have possession or control of the original or a copy of the writing and either of the following conditions is satisfied: (1) Neither the writing nor a copy of the writing was reasonably procurable by the proponent by use of the court's process or by other available means. (2) The writing is not closely related to the controlling issues and it would be inexpedient to require its production. (d) Oral testimony of the content of a writing is not made inadmissible.. if the writing consists of numerous accounts or other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole. ✱ EVIDENCE OF APW'S HARASSMENT & THE DEFENDANT HAS BEEN LOST AND MAY NOT BE RECOVERABLE (PREJUDICED)

<u>page #56</u>  <u>Scale of Justice</u> "Prosecution's Burden of Proof"

<u>Escobedo v. Illinois</u> (officers continued to question and gather information from the defendant after he refused to speak more without consulting an attorney. This resulted in the unwarranted (Scale #1) seizure of a PC and laptop, and the knowledge of model replicas of a kerta **Beyond a Reasonable Doubt** na and naginata the defendant displayed at hom  e, which was later seized days after his arrest. Note: <u>Fruit of the poisonous tr</u>  ee doctrine.)

<u>Dickey v. Florida</u> (the defendant will suffer su  bst  antial prejudice in regards to a fair trial because of deliberate und  ue  delay in prosecution. The alleged victims are affiliates of an organi  zatio  n with elements of a criminal mob, and will entertain time  to sec  ure  alibis for their conspira y and abuse/harassment of the  defen  dant. Evidence of harassment by the alleged victims have been  lost  and may n  ot be recovered. Prosecutor s have resumed discovery w  hile it  is denied  to  **empty** the defen  dant. Leaders and seniors of  APW are  given  time to  bribe pot ential defense witnesses, or  command and  inst  ru  ct them, which are evident practices in the org  anization.)

<u>Klopfer v. North Carolina</u> (the  defendant sta  ted clearly to the arresting officer during booking  n that he was  "Not guilty" and would excercise his right to  a "speedy trial".  He also stated this upon meeting his court  appoin  ted **(DEFENDANT'S CASE)** counsel who lite rally begged the defe  nd  ant  replo  rted ley to waive time. The defendant also stated this to D.  A.  appointed doctor, Dr. Singh, who deliberately misdiagnosed him to  be  incompetent. Prejudice to the defendant is previously mention  ed above.)

<u>Napue v. Illinois</u> (th  e prosecution is aw are of false and uncredible evidence, and have refused to disclose to the defend ant, the fraudulent **(PROSECUTION'S CASE)** and prejudiced police reports and complaints. Due Process is being violated as the defendant wishes to dispute and have this report <u>corrected</u>. In all, the defendant is being held and will be prosecuted by perjured and suppressed material. The Court has also forwarded a fraud  ulent pl  acement report, which miscon strued the charges pend  ing to Christopher A. Chapa, Com munity Program Directo  r  of Anka Behavioral Health Inc., to secure the maltreatm  ent and  false imprisonment of the defendant.)

<u>Chapman ETAL v. Cali fornia</u> (the  D.A. have  voluntarily and repea tedley released defam  atory and s  landerous  material to the media based on hearsay du  ring  these un  due susp  en  ded proceedings, which is not harmless  error but  malicious  attacks on the defend ants character pen  ding trial, violati  ng  constitutional rights protected b  y  the 5th  and 14th  Amendments. Machin e gun repitition  denial of co  nstitutional rights is grossly evident.

**(PROSECUTION'S CASE)**

**(DEFENDANT'S CASE)**

* last of 59 paged document numbered 0-56 attached to petition for a writ of Habeas Corpus by Marlon Estacio Pagtakhan.

(Scale #2)
<u>All Pro Wrestling v. the defendant</u>

I declare that the information stated is true and correct under the penalty of perjury. Marlon E. Pagtakhan
December 11th, 2007